

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-24-2005

# Lin v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-3747

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Lin v. Atty Gen USA" (2005). *2005 Decisions.* Paper 1435.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1435

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 03-3747
_____

JIAN PING LIN,

Petitioner

v.

ATTORNEY GENERAL, USA; BUREAU OF
CITIZENSHIP AND IMMIGRATION SERVICES,

Respondents

_____

Petition for Review of an Order of the
Board of Immigration Appeals
(No. A77-354-246)
_____

Submitted Under Third Circuit LAR 34.1(a)
March 11, 2005

Before: NYGAARD, McKEE, and RENDELL, Circuit Judges.

(Filed: March 24, 2005)

_____

OPINION OF THE COURT
_____

NYGAARD, Circuit Judge.

Petitioner Jian Ping Lin is a native and citizen of China who petitions this Court for review of a final order of removal from the Board of Immigration Appeals. We have jurisdiction under 8 U.S.C. § 1252 and now will deny the petition.

## I.

Lin arrived in the United States without a valid entry document and a Notice to Appear was issued by the Immigration and Naturalization Service.[1] Lin then filed an application for political asylum, withholding of removal, and protection under the Convention Against Torture. At a hearing, Lin conceded the violations charged and deportability; however, he continued to press his asylum claims.

The Immigration Judge denied Lin's applications for asylum, withholding of removal, and protection under CAT, and ordered him removed from the United States. Lin appealed the IJ's ruling to the BIA which issued a summary affirmance without opinion. Lin now appeals.

## II.

Because we write only for the parties, we review the facts briefly. Lin claims he will be arrested and beaten if he is returned to China. His initial claim stemmed from one incident when Lin was asked, for the first time ever, to work overnight at his job

---

1. The Department of Homeland Security now handles the enforcement functions of the Immigration and Naturalization Service.

where he was a clerk for the Land Administration. He was told to give food to people who were being detained in the basement of his building. According to Lin, the building, which housed the Land Administration, also housed the Department of Family Planning. When Lin entered the basement, he found five pregnant women, and, because he felt sorry for them, he released them. He worked the rest of his shift until 7:30 a.m. Lin claims that he returned to his parents home after his shift and slept until he was awakened.[2] Lin then fled to another town about 12 hours from his home. When Lin called home, his mother informed him that the police were looking for him. When Lin called again, his mother said that the police told her that if Lin returned he would be arrested and detained. Lin then fled China to the United States.

Lin also gives three other possible bases for his asylum claim. First, he says that he has a fiancé in China who has given birth to a baby boy. The IJ did not allow Lin to develop this testimony.[3] In his Petition, Lin claims that the IJ's refusal was a violation of his due process rights, but does not articulate how this information may have established a valid asylum claim. Second, Lin claims to be a practicing member of the Falun Gong. When Lin began testifying about his beliefs, the IJ stated that she was "not

---

2.      It is unclear how Lin was awakened, the record indicates in one place that he said he heard a knock at the door, another time he said a neighbor woke him, and he also gave information that he saw town officials and police coming toward his home.

3.      The IJ stated "I just don't want to burden the record with irrelevant data. I'm not—I don't really see the relevance." After this statement, Lin's counsel did not ask any further questions about the baby.

going to be convinced of the sincerity of his interest in the Falun Gong." The IJ questioned the fact that Lin became a member of the group after his arrival in the United States. The IJ found no evidence that he would be tortured or persecuted upon his return to China, and, because he recently began practicing the religion, there was no evidence of past persecution. Third, Lin claims that because he left China under a false passport and to escape arrest he will be arrested, detained and beaten upon his return.

### III.

When, as here, the IJ bases his or her decision in large part on an adverse credibility determination, it must be upheld unless "any reasonable adjudicator would be compelled to conclude to the contrary." *He Chun Chen v. Aschroft*, 376 F.3d 215, 222 (3d Cir. 2004). An IJ's adverse credibility determination must be based on "specific, cogent reasons," such as, "inconsistent statements, contradictory evidences, and inherently improbable testimony . . . in view of the background evidence on country conditions." *Dia v. Ashcroft*, 353 F.3d 228, 249 (3d Cir. 2003) (en banc). Thus, we are required to uphold an adverse credibility determination unless "no reasonable person would have found the applicant incredible." *Chen*, 376 F.3d at 222. Here, the IJ's adverse credibility decision was based on inconsistent statements, a lack of evidence, and a general lack of plausibility in Lin's story, and is supported by substantial evidence.

The IJ found that Lin's story lacked detail and specificity. Lin's testimony regarding his work history was inconsistent with his household registration book. He was

4

also unable to provide any corroboration regarding his employment with the Land Management Agency, which made it impossible for the INS to even confirm the basis of his claim. For example, Lin's inability to provide names of his supervisors made it impossible to confirm that he worked in for the Land Administration or that he was in trouble because of his conduct as an employee.

Furthermore, the IJ found Lin's story regarding the events which took place in the basement of his building implausible. Although an adverse credibility decision cannot be based solely on speculation or conjecture, *see Chen*, 376 F.3d at 222, the fact that a story is "inherently improbable" can be considered, *see Dia,* 353 F.3d at 349. Here, the IJ stated: "I find doubtful respondent's claim that there was another agency in this building called the family planning agency, and that they locked up pregnant women in the basement of the building and then asked a completely unrelated, separate agency, the land management agency, to have one of its newest and most menial employees go down to the basement and feed these detainees in the late evening." (Pet'r A. at 10-11). The IJ also found the rest of Lin's story, that he went back to work for the rest of the night and then returned home and slept, unlikely. Given the general lack of detail as well as the variations in Lin's story, the IJ's determination that Lin's story was implausible is supported by substantial evidence.

Even assuming that Lin's story had some validity, the IJ found that he had not presented evidence that he would be subjected to persecution or torture upon his

5

return. Although Lin testified that the police were looking for him and would arrest him upon his return, the IJ found that there was no evidence that he would be beaten or otherwise mistreated. The IJ found that it was "simply unclear that he would have been harmed" if he would have spoken with police. (Pet'r A. at 12). Given our deferential standard of review, Lin has not meet his burden of establishing that the evidence is "so compelling that no reasonable fact finder could fail to find the requisite fear of persecution." *INS v. Elias-Zacarias*, 502 U.S. 478, 483-84 (1992). The IJ's opinion is supported by substantial evidence. Accordingly, the Petition for Review will be denied.